John Doherty and Wife *v.* V. K. Stevenson.

April Term, 1875.

Husband and wife — Bill by both dismissed without prejudice to rights of wife. — A bill by husband and wife for the specific performance of a contract, in consideration of a release by both of a claim on land, will be dismissed unless the release, defective for want of a proper certificate of probate as to the wife, is made effectual as to both; but, the bill being in legal effect the bill of the husband, without prejudice to the rights of the wife.

*Shackelford & Helms,* for complainants.
*G. M. Fogg,* for defendant.

The Chancellor : — The complainant, John Doherty, being a contractor on the Nashville and North-Western Railroad, of which company the defendant was president, purchased from the defendant several lots in West Nashville, for about $4,000, paying him therefor in stock and second mortgage bonds of the company, received for work done as a contractor. Afterwards he purchased several other lots, the lots of both purchases lying in one body, agreeing to pay him therefor about $6,000 in the money which would be due him as a contractor at the completion of the work, and reserved by the company to ensure the completion. On August 19, 1861, the defendant conveyed the whole of the lots contained in these purchases to Doherty in fee, reciting a consideration of $11,000 paid. In reality, the consideration for the lots last purchased was not paid, the reserved money not being then payable, and Doherty had given his individual note for the purchase-money, which was left with the treasurer of the company, to be paid when the reserved fund became payable. This contingency occurred on November 1, 1861, and the company, having no money with which to pay, by the defendant as its president executed three notes of that date, payable to Doherty, at one and two years' time, for $2,122.66 each, bearing interest from date. About the date of their execution, Doherty

called at the office of the treasurer of the company, Stevenson not being present, and indorsed these notes in blank, leaving them with the treasurer for Stevenson, and taking up his own note for about the same amount, given for the lots last bought as above stated. The proof tends to show that the company never afterwards had the money with which to pay these notes. Stevenson brought suit against Doherty on two of these notes, and, on May 25, 1867, recovered judgments for the respective amounts called for on their face, with interest, and caused executions to issue, which were returned *nulla bona*.

The defendant sued Doherty on the other note, in the Circuit Court of the United States, at Nashville, but on the trial took a nonsuit, because of the testimony of Doherty, Stevenson not being present to give his version of the transaction. He afterwards brought a new suit on the note, which was compromised as hereinafter explained.

In the meantime, Doherty had conveyed the lots thus bought to his wife. Subsequently, one Magdalen Kidd, as a creditor of Doherty, filed a bill against him and his wife, in this court, to subject the lots in controversy to the satisfaction of her debt, on the ground that the conveyance to the wife had been made with a fraudulent intent to hinder and delay the husband's creditors. No defence was made to this suit, either by Doherty or his wife, and a decree was rendered for a sale of the lots, subject to redemption, and they were sold, in block, under this decree, by the master to the complainant Kidd, and the sale was confirmed without exception. About the time the period allowed by law for the redemption of these lots ran out, the defendant bought from Magdalen Kidd her interest in the lots under the sale. The terms of this trade do not appear, nor the mode in which the interest was transferred. It seems, however, that the defendant, upon the idea that he was subrogated to the purchaser's rights, and entitled to a writ to put him in possession of the lots, proposed to Doherty that if he

would surrender the lots, and he and his wife release all title thereto and interest therein, he, Stevenson, would dismiss his suit against Doherty in the Circuit Court of the United States, and release him from all liability on said notes. This proposition led to negotiations, and on March 7, 1872, Doherty went with his counsel to the office of the counsel of defendant, the defendant himself being in New York, taking with him the draft of a written agreement drawn up by his, Doherty's, own counsel, embodying the terms of a compromise. This written agreement was, with the assent of Doherty and in his presence, interlined by his counsel so as to modify its terms, agreed to by both parties as modified, and taken by Doherty to be executed by his wife. It was afterwards returned to defendant's counsel, signed by Doherty and wife, with his acknowledgment, and with what purported to be the acknowledgment and privy examination of his wife of its execution. The certificate of the privy examination of the wife is, however, fatally defective in omitting to state that the officer taking the probate was personally acquainted with the wife.

The present bill is filed to have this agreement executed according to the understanding of the complainant Doherty of the terms. He insists that the contract was that the defendant, in consideration of the release of himself and wife of any claim to the lots, agreed to account to him for the stock, bonds, and other considerations received by the defendant from him for said lots.

The agreement, as drawn by Doherty's counsel, was, in substance, a cancellation of the original trade between Doherty and Stevenson, and a reconveyance by Doherty and wife of their right, title, and interest in the lots to Stevenson. It commenced by stating the original sale and conveyance of August 19, 1861, for the consideration of $11,000, and recited that Doherty had, "by way of payment," transferred to Stevenson a debt due to Doherty by account from the Nashville and North-Western Railroad Company, for work and labor done in the building of the rail-

road of said company, " as will appear," says the agreement, " from my transfer on the books of said company, and also gave to him three promissory notes of said company, indorsed by me, each for upwards of twenty-one hundred dollars, in part of the same debt. And whereas we have since agreed to cancel the trade, he to deliver up to me my promissory notes aforesaid, and also to transfer to me the account I had transferred to him on the books of said company, and I to convey back to him the lots aforesaid; now, therefore, in consideration of the premises, and five dollars," Doherty and wife reconvey and release said lots.

Doherty's own testimony is that the counsel of Stevenson objected to that part of the instrument requiring the transfer to Doherty of the account that Doherty had transferred on the books of the company, saying he knew nothing about the account, and had no authority to agree to the stipulation, but that he was willing to transfer any part of the account that had not been paid; that the contract was thereupon interlined so as to read, " the account *yet unpaid*, which I had transferred." The alteration is in the insertion of the words " yet unpaid."

The bill not having been filed to rectify the instrument, the rights of the parties must depend upon the language therein used. Any parol negotiations were merged in the writing. *Bridges* v. *Robinson*, 2 Tenn. Ch. 723. The contract is a rescission and reconveyance, upon certain considerations. These considerations are the delivery up of the three promissory notes, and the account transferred so far as it remained " yet unpaid." All the relief the complainants would, in any event, be entitled to would be the delivery up of the notes and unpaid account, and in the event of the failure or inability of Stevenson to comply with any part of his agreement, to damages for the failure. The damages would be the value of the notes and unpaid account when they should have been surrendered, or now, at the option of the complainants. *Robinson* v. *Harrison*, 2 Tenn. Ch. 11. If Stevenson has since received from the

company any part of the notes, or "unpaid account," the complainants would be entitled to recover the money thus collected, with interest, in the way of damages. A reference would be necessary to ascertain the facts and the damages.

It is obvious, however, that complainants are not entitled to any relief unless the reconveyance of the lots is good, or made good, both as to Doherty and wife. They can have a decree as above upon perfecting the release and reconveyance of the wife, or consenting to a proper decree in that regard. If they decline to do this, their bill must be dismissed, with costs. This bill is, however, in the eye of the law, the suit of the husband alone. *Wake* v. *Parker*, 2 Keen, 59, 74; *Reeve* v. *Dalby*, 2 Sim. & St. 464; *Simons* v. *Horwood*, 1 Keen, 7; *Laird* v. *Tobin*, 1 Mol. 543; *Grant* v. *Van Schoonhoven*, 9 Paige, 255. The dismissal of the bill must, therefore, be without prejudice to her rights, if she have any.